IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COUNTRY CLASSICS AT | : | |
| MORGAN HILL HOMEOWNERS' | : | |
| ASSOCIATION, INC., a/k/a | : | |
| COUNTRY CLASSICS AT | : | |
| MORGAN HILL CONDOMINIUM | : | |
| ASSOCIATION, INC., | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 09-CV-4903 |
| COUNTRY CLASSICS AT | : | |
| MORGAN HILL, LLC, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION AND ORDER**

Rufe, J.                                                                                                    April 27, 2011

  Before the Court is Defendant Country Classics at Morgan Hill, LLC's ("CCMH") Motion to Dismiss Counts II and III and Motion for a More Definite Statement as to Count I (doc. no. 2) of Plaintiff's Complaint (doc. no. 1). This is a civil action that arises from the sale of condominium units to individual owners (the "unit owners"). For the following reasons, the Motions are denied in part and granted in part.

**I.    BACKGROUND**[1]

  Defendant CCMH, is the Declarant and developer of a condominium known as a Country

---

[1] The facts are taken from the Complaint and the Plaintiff's Opposition to the Motion to Dismiss, and, consistent with the applicable standard of review, are accepted as true for the purposes of this Motion.

Classics at Morgan Hill (the "Development").[2] The Development consists of townhouse dwellings, two-story buildings with dwellings on each floor ("condominiums"), and the "common facilities."[3][4] The Development is enclosed within a retaining wall and is bordered by other developments constructed and marketed by CCMH, and a golf course owned by CCMH or a closely-related entity.[5] Although CCMH has sold units within the Development, it remains a unit owner.[6] Each unit owner is a member of the Country Classics at Morgan Hill Condominium Association, Inc. (the "Association"). Unit owners are required to financially support the Association.[7]

Through the Declaration of Condominium for Country Classics at Morgan Hill ("Declaration"), CCMH established the Association to manage and maintain the Development.[8] Specifically, the Association was tasked with repairing any defects in the Development at its own expense,[9] including those affecting the retaining wall.[10] Problems that have arisen include

---

[2] See Compl. ¶¶ 6, 8.

[3] "Common facilities" are the portions of the development "which are (or shall be) owned by or leased to [Country Classics at Mogan Hill Condominium Association, Inc.] (other than Condominium[s][], and Town Home[s][] and [the] Golf Course[]) . . . ." (Declaration § 3.01(j).)

[4] See Compl. ¶ 7.

[5] See Compl. ¶ 65.

[6] Compl. ¶¶ 10–11.

[7] See Compl. ¶ 13

[8] See Compl. ¶¶ 1, 6–7.

[9] See Compl. ¶¶ 29, 36, 42, 48, 53, 58.

[10] Compl. ¶¶ 38–43, 63–64.

driveways that crumbled as a result of Defendant's failure to achieve proper asphalt pavement and stone sub-base thickness,[11] water leaks attributed to improperly installed fire suppression systems,[12] retaining walls that have developed fissures and instability as a result of improper construction,[13] deficiently constructed breezeways that do not meet design specifications or adequately protect individuals from the weather,[14] inadequate and incomplete landscaping that does not comply with design specifications,[15] and storm water retention as a result of improperly constructed water drainage systems behind units 173 and 174.[16] As the Declarant, CCMH warranted against structural defects in these common elements.[17]

The Association filed the instant, three-count Complaint on October 3, 2009 in the Court of Common Pleas of Northampton County, Pennsylvania. CCMH removed the case on October 26, 2009 on the basis of diversity jurisdiction.[18] At Count One, the Association alleges that

---

[11] Compl. ¶¶ 25, 27.

[12] Compl. ¶ 35.

[13] Compl. ¶ 41.

[14] Compl. ¶ 47.

[15] Compl. ¶ 52.

[16] Compl. ¶¶ 57-58.

[17] Compl. ¶ 9 (citing 68 Pa.C.S. § 3411(b).

[18] Notice of Removal (Doc. No. 1). This Court has diversity jurisdiction over this matter because the Defendants are completely diverse from the Association and the amount in controversy here exceeds $75,000. The Association is incorporated under the laws of the Commonwealth of Pennsylvania, and has its principal place of business in Easton, Pennsylvania. CCMH, on the other hand, is a limited liability company organized under the laws of New Jersey, with its principal place of business in Hillsborough, New Jersey. For jurisdictional purposes, the citizenship of a limited liability company is determined by the citizenship of all its members. See, e.g. Kimberly-Clark Pa., LLC v. Del. County Regional Water Quality Control Authority, 527 F. Supp. 2d 430, 433 (E.D. Pa. 2007) (noting that although neither the

CCMH breached the Declaration and/or the warranties provided thereto by neglecting to pay the proper unit owner assessments,[19] miscalculating the annual capital reserve necessary to maintain the Development,[20] and failing to properly construct and/or install the Development's driveways, fire suppression systems, retaining walls, breezeways, lanscaping, and drainage systems. At Count Two, the Association alleges that CCMH was unjustly enriched because it benefitted from the retaining wall that the Association is charged with maintaining under the Declaration, and that the language in the Declaration establishing that duty is unconscionable. In count three, the Association avers that Defendant's failure to properly address the Development's defects constitute violations of Pennsylvania's Unfair Trade Practice and Consumer Protection Law[21] ("UTPCPL").[22] The Association is seeking compensatory damages, attorney's fees, and treble damages in the amount of $1,190,917.36.

Defendant now moves to dismiss Counts Two and Three and order Plaintiff to file an Amended Complaint dividing Count One into separate counts for each of the allegations contained therein.

---

Supreme Court nor the Third Circuit have specifically ruled on this issue, all Circuit Courts that have addressed the issue have concluded that an LLC is a partnership for diversity purposes and the citizenship of a LLC is determined by the citizenship of all its members) (citing Carden v. Arkoma Assoc., 494 U.S. 185, 195–96 (1990) (holding that the citizenship of a limited partnership for diversity jurisdiction purposes is determined by the citizenship of all its members); Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 205 (3d Cir. 2007) (applying Carden to determine that the citizenship of a trust is determined by the citizenship of all its trustees and beneficiaries)). CCMH has two members, both of whom are citizens of New Jersey. Complete diversity exists between all Parties.

[19] Compl. ¶ 13.

[20] Compl. ¶¶ 18-21.

[21] 73 P.S. § 201-1, et.seq.

[22] Compl. ¶¶ 70-74.

## II. STANDARDS OF REVIEW

### A. MOTION FOR A MORE DEFINITE STATEMENT

Federal Rule of Civil Procedure 12(e) provides, that a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[23] Because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim, motions for a more definite statement are "highly disfavored."[24] Therefore, 12(e) motions will be granted only "if a pleading is so vague or ambiguous that the opposing party cannot reasonably be required to make a responsive pleading."[25]

### B. MOTION TO DISMISS

A complaint can be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has not presented "'enough facts to raise a reasonable expectation that discovery will reveal evidence' of [a] necessary

---

[23] Fed. R. Civ. P. 12(e).

[24] Hughes v. Smith, No. 03-CV-5035, 2005 WL 435226, at *4 (E.D. Pa. Feb. 24, 2005) (This is true because the "overall scheme of federal rules calls for skeletal pleadings and places the burden of unearthing factual details on the discovery process.").

[25] S.E.C. v. Saltzman, 127 F. Supp. 2d 660, 667 (E.D. Pa. 2000).

element."[26] A court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[27] However, Plaintiffs' "bald assertions" or "legal conclusions" need not be accepted as true by the court.[28] At this stage, the court does not determine whether the non-moving party will prevail, but whether it will be permitted to offer evidence in support of the claims in the complaint.[29]

This particular pleading standard, described in Federal Rule of Civil Procedure 8(a)(2) as "a short and plain statement of the claim showing that the pleader is entitled to relief"[30] has been addressed twice by the Supreme Court of the United States in recent years, first in Bell Atlantic Corp. v. Twombly[31] and then in Ashcroft v. Iqbal.[32] The Court in Twombly articulated a "plausibility" standard that a plaintiff must meet by its factual allegations to survive a motion to dismiss.[33] The Court described it as a level higher than suspicion or speculation.[34] Iqbal clarified

---

[26] Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 n.3 (2007)).

[27] Id. at 233.

[28] In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429–30 (3d Cir. 1997).

[29] Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227 at *4 (E.D. Pa. Jan. 23, 2008) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

[30] Fed. R. Civ. P. 8(a)(2).

[31] 550 U.S. 544 (2007).

[32] 129 S. Ct. 1937 (2009).

[33] Twombly, 550 U.S. at 556.

[34] Id. at 555. The decision in Twombly retired the previous standard articulated in Conley v. Gibson, 355 U.S. 41 (1957), allowing dismissal if it "appears beyond doubt that the plaintiff can prove no

that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[35]

### III. DISCUSSION

#### A. MOTION FOR MORE DEFINITE STATEMENT: COUNT I

Under Federal Rule of Civil Procedure 10(b), "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if doing so would promote clarity.[36] "The use of separate counts becomes increasingly important when a plaintiff files suit against multiple . . . defendants and alleges various claims against each."[37]

Here, CCMH requests that Plaintiff amend Count I of its Complaint because it includes eight separate breach-of-contract claims. Defendant, however, apparently recognizes that Plaintiff has alleged the following: (1) breach of contract for Defendant's failure to pay assessments to Plaintiff; (2) breach of fiduciary duty for Defendant's failure to properly capitalize the Association's reserve fund; (3) breach of contract for Defendant's failure to properly construct the complex's driveways; (4) breach of contract for Defendant's failure to properly install the complex's fire suppression systems; (5) breach of contract for Defendant's failure to properly

---

set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45–46.

[35] Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

[36] Fed. R. Civ. P. 10(b).

[37] Walker v. Wentz, No. 06-CV-2411, 2008 WL 450438, at *5 (M.D. Pa. Feb 15, 2008) (citations omitted).

construct a retaining wall; (6) breach of contract for Defendant's failure to properly construct the complex's breezeways; (7) breach of contract for Defendant's failure to properly landscape the complex; and (8) breach of contract for Defendant's failure to properly construct the storm-water-drainage systems located behind units 173 and 174.[38]

The fact that Defendant has successfully identified the separate claims in Count I—which are delineated by headings in underlined, bold-face type—demonstrates that the Association's Complaint is not "so vague or ambiguous" that CCMH cannot properly respond. Furthermore, the Complaint names only one defendant, not several, so CCMH cannot contend that it is unable to determine which party is expected to answer the individual claims.

Thus, because Defendant can easily discern Plaintiff's specific allegations from the face of the Complaint, the motion for a more definite statement will be denied.

B.     MOTION TO DISMISS: COUNT II

1.     **Unjust Enrichment**

In Pennsylvania, a claim for unjust enrichment has three elements: (1) a benefit conferred on the Defendant by Plaintiff; (2) appreciation of that benefit by the Defendant; and (3) acceptance and retention of that benefit under circumstances that it would be inequitable for the Defendant to retain the benefit without paying value.[39]

---

[38] Mot. to Dismiss 18–19 (listing the breach-of-contract claims in Count I of Plaintiff's complaint).

[39] Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993); see also Mack v. Bear Stearns Residential Mortg. Corp., --- F. Supp. 2d ---, No. 09-CV-5370, 2010 WL 5136033, at *3 (E.D. Pa Nov. 30, 2010).

CCMH asserts that the Association has not stated a claim for unjust enrichment because it fails to allege facts to support its contention that "Defendant and other communities outside of the Condominium enjoy the benefit" of the retaining walls. Additionally, CCMH suggests that the allegation that "Defendant or a related entity" owned the golf-course bordering portions of the retaining walls is insufficient to establish that it received a benefit. CCMH's arguments are misguided.

The Association's Complaint clearly alleges that the retaining walls border adjoining housing developments and a golf course and that Plaintiff is solely responsible for the maintenance of those walls. The fact that the walls border these other entities alone is evidence that the entities enjoy a benefit. Furthermore, Defendant's focus on Plaintiff's allegation that an entity related to the Defendant owns the golf course is misplaced for two reasons. First, the Association claims that CCMH owns the adjoining golf course;[40] if this contention is established, Plaintiff will satisfy its burden to show that Defendant received a benefit from the retaining walls and Plaintiff's maintenance thereof. Second, the Association claims that CCMH constructed and sold the residences within the adjoining developments. If true, this will demonstrate that Defendant reaped direct financial benefits from the existence of the wall without shouldering any responsibility for its upkeep. Therefore, Plaintiff has properly alleged an unjust enrichment claim, and the Court will deny Defendant's motion to dismiss Count II insofar as it implicates this theory of recovery.

**2.     Unconscionability of Declaration**

---

[40] Federal Rule of Civil Procedure 8(e)(2) permits plaintiffs to plead alternative, inconsistent theories of relief.

In essence, the Association asserts that the Declaration is an unconscionable adhesion contract because the unit owners were forced to bear sole responsibility for maintenance of the retaining walls and had no choice but to abide by the terms of the Declaration as written, and that, under 68 Pa.C.S. § 3108 and § 3111, this Court may refuse to enforce the relevant contractual provision.[41] In opposition, CCMH contends that the unconscionability doctrine[42] is only applicable in cases, unlike the one at bar, in which a defect in the bargaining process is alleged. In addition, Defendant claims that Section 3111 of the Pennsylvania Uniform Condominium Act ("UCA"),[43] does not apply to condominium declarations because they are not contracts.[44]

Although Pennsylvania courts have examined condominium declarations under the

---

[41] Section 3108 provides that the principles of law and equity apply to condominiums; Section 3111 permits the Court to "(1) refuse to enforce the contract; (2) enforce the remainder of the contract without the unconscionable clause; or (3) limit the application of any unconscionable clause in order to avoid an unconscionable result."

[42] "A contract or term is unconscionable, and therefore avoidable, when there is a lack of meaningful choice in acceptance of the challenged provision and the provision unreasonably favors the party asserting it." Salley v. Option One Mortg. Corp., 925 A.2d 115, 119 (Pa. 2007) (citing Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)). "The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively." Id. (citing 17A Am. Jur. 2d Contracts § 278 (2006)). "For a contractual provision to be deemed unconscionable, the party seeking invalidation must demonstrate that the provision is both procedurally and substantively unconscionable . . . ." Darby Anesthesia Assocs., Inc. v. Anesthesia Bus. Consultants, LLC, No. 06-1565, 2008 WL 2845587, at *3 (E.D. Pa. July 23, 2008) (citing WXON-TV, Inc. v. A.C. Nielsen Co., 740 F. Supp. 1261, 1264 (E.D. Mich. 1990)). "Procedural unconscionability is generally found where there is a contract of adhesion." Hopkins v. New Day Fin., 643 F. Supp. 2d 704, 717 (E.D. Pa. 2009) (citing Witmer v. Exxon Corp., 434 A.2d 1222, 1228 (Pa. 1981)). "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Id. at 718 (citing Huegel v. Mifflin Constr. Co., 796 A.2d 350, 357 (Pa. Super. Ct. 2002)).

[43] 68 Pa. C.S. § 3101, et seq.

[44] A condominium declaration is defined as a "perpetual governing instrument for the condominium." 68 Pa.C.S. § 3219, Comment 1.

umbrella of general contract law,[45] none have specifically addressed the question of the applicability of the unconscionability doctrine to condominium declarations. Assuming, arguendo, that Pennsylvania courts would affirmatively answer that question, Plaintiff is still unable to sustain the unconscionability claim as alleged. Even accepting Plaintiff's factual averments as true, the claim is deficient because Plaintiff has not alleged that the unit owners were in a weaker position than CCMH at the time of purchase,[46] or that they lacked a meaningful choice in assenting to the Declaration. Though the unit owners did not negotiate the Declaration's terms, Plaintiff does not allege that the unit owners were under undue pressure to purchase a condominium or other residence, that the Declaration's terms were either misleading or hidden, or that the unit owners could not refuse CCMH's offer and purchase another residence elsewhere. Without alleging such facts, the Association has failed to demonstrate procedural unconscionability and the claim may not surpass this stage of review.[47]

## C. Motion to Dismiss: Count III

Defendant contends that the Association lacks standing to allege a violation of the UTCPL

---

[45] See Condo. Ass'n Court of Old Swedes v. Steim-O'Brien, 973 A.2d 475, 480, 482–83 (Pa. Commw. Ct. 2009); Riverwatch Condo. Owners Ass'n v. Restoration Dev. Corp., 980 A.2d 674, 683–84 (Pa. Commw. Ct. 2009) (quoting Mayflower Square Condo. Ass'n v. KMALM, Inc., 724 A.2d 389, 394 (Pa. Commw. Ct. 2009)); Wrenfield Homeowners Ass'n, Inc. v. DeYoung, 600 A.2d 960, 963 (Pa. Super. Ct. 1991) (citations omitted).

[46] See Bayne v. Smith, 965 A.2d 265, 267 (Pa. Super. Ct. 2009) ("An adhesion contract is defined as a standard form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms.") (citation, alteration, and quotation marks omitted).

[47] See Borden, Inc. v. Advent Ink Co., 701 A.2d 255, 264 (Pa. Super. Ct. 1997) ("[M]ere unequal bargaining power . . . does not render the contract, or a provision thereof, unconscionable.").

under Count III because the Association is not a "purchaser" as required by the UTPCPL. The Court agrees.

In pertinent part, the UTPCPL provides as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100.00), whichever is greater.[48]

Although the statute's language reserves standing for parties that have bought or leased a good or service,[49] the Association relies upon Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.[50] for the proposition that it has standing to sue on the individual unit owners behalf. In Valley Forge Towers, a condominium association was permitted to pursue a private cause of action under the UTPCPL against Mameco International Inc. on behalf of its individual unit owners when the association contracted with Ron-Ike Foam Insulators, Inc. to install a roofing membrane manufactured by Mameco.[51] Although the association did not directly contract with Mameco, the Pennsylvania Superior Court found that the association could file suit on behalf of the individual unit owners because it had suffered losses as a result of its installation contract, which specified that Mameco's materials were to be installed, and Mameco had issued a warranty

---

[48] 73 P.S. § 201-9.2(a).

[49] Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992), CCMH relies upon Valley Forge Towers South Condo. v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641 (Pa Super. Ct. 1990).

[50] 574 A.2d 641 (Pa. Super. Ct. 1990).

[51] Id. at 647.

12

directly to the association.[52]

The Association also argues that Spiro v. Prudential Relocation, Inc.[53] and Caciolo v. Masco Contractor Servs. East, Inc.[54] support its contention that it was "specifically foreseeable" and reasonable for it, acting in its representative capacity, to rely upon Defendant's warranties. In Spiro, plaintiff, a United States Department of Defense ("DOD") employee, agreed to DOD's request to relocate to Japan.[55] In accordance with her DOD employment contract, DOD was required to obtain property management services on her behalf.[56] DOD and defendant were parties to a contract requiring defendant to provide relocation and property management services for plaintiff.[57] Plaintiff entered into an additional contract with defendant for the purposes of leasing her residence.[58] The tenants subsequently damaged plaintiff's property.[59] In holding that plaintiff was a purchaser under the UTPCPL, the District Court noted that the value of the property-management services procured by the DOD was taxable income to her, and that to hold that plaintiff was not a purchaser of the services "would allow form to tower over substance, as the funds that were used to pay [d]efendant for its services were properly considered taxable

---

[52] Id. at 644.

[53] No. 06-CV-0834, 2007 WL 675426 (M.D. Pa. Mar. 1, 2007).

[54] No. 04-CV-0962, 2004 WL 2677170 (E.D. Pa. Nov. 22, 2004).

[55] 2007 WL 675426 at *1.

[56] Id. at *9.

[57] Id. at *1.

[58] 2007 WL 675426 at *1, 5.

[59] Id. at *1.

13

income earned by Ms. Spiro and merely passed to Defendant through Ms. Spiro's employer rather than from her directly."[60] Furthermore, the court stressed that plaintiff's reasonable reliance upon the defendant's assurances was specifically foreseeable because she had separately contracted with defendant to provide services and was clearly the beneficiary and consumer of the services provided pursuant to the various property-management contracts. [61]

Similarly, in Caciolo, the plaintiff was the president Monogram Custom Homes ("Monogram"), which contracted with the defendant for the sale and installation of a pizza oven and related items at plaintiff's property.[62] A fire, allegedly resulting from faulty installation of the items, subsequently damaged plaintiff's property.[63] The Court held that plaintiff's reliance on defendant's warranties could be both reasonable and foreseeable based upon plaintiff's status as the third-party beneficiary to the purchase and installation agreement between Monogram and defendant, and permitted plaintiff to pursue a UTPCPL claim against defendant,[64]

These cases, however, are distinguishable and thus do not support Association's position. Here, the Association's allegations are based upon the Declaration and the unit owners' purchases; Plaintiff neither claims that it contracted with another party to provide goods or services for the unit owners' benefit, nor that it is the third-party beneficiary of any contract entered into by CCMH for goods or services. Consequently, Plaintiff is not a purchaser acting in

---

[60] Id. at *9.

[61] Id. at * 9–10.

[62] 2004 WL 2677170 at *1.

[63] Id.

[64] Id. at *4.

its representative capacity and may not maintain a private action under the UTPCPL.[65]

## IV. CONCLUSION

For the foregoing reasons, the Court shall grant Defendant's Motion to Dismiss Count II, to the extent that it alleges contractual unconscionability, and Count III of Plaintiff's Complaint. The Court denies Defendant's Motion to Dismiss in all other respects and its Motion for a More Definite Statement in its entirety.

An appropriate Order follows.

---

[65] See Coronado Condo. Ass'n, Inc. v. Iron Stone Coronado, L.P., No. 2691, 2005 WL 3036541, at *1 (Phila. Ct. Com. Pl. Nov. 7, 2005) (citations omitted) (holding that a condominium association may not bring a UTPCPL claim based solely on its representation of unit owners); Greencort Condominium Ass'n v. Greencort Partners, No. 04045, 2004 WL 3051336, at *3 (Phila. Ct. Com. Pl. Apr. 30, 2004) (concluding that a condominium association is not a purchaser under the UTPCPL by virtue of its responsibilities in "administering the affairs and interests of the unit owners") (citing Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 241 (3d Cir. 2002)); see also Katz, 972 F.2d at 56–57 (noting that plaintiff lacked standing to sue under the UTPCPL where "[t]here was no commercial bargaining or exchange" between plaintiff and defendant, and stating that "there is no indication the [Valley Forge Towers] court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant").